UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LISA BALLINGER, | : | Case No. 3:12-cv-30 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

### ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge (the "ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 9-22) (ALJ's decision)).

### I.

On May 1, 2007, Plaintiff applied for DIB and SSI, asserting that she was disabled and could no longer work beginning December 14, 2006. (Tr. 9). Plaintiff claims that she was unable to work because of fibromyalgia, polyneuropathy,[1] affective disorder,[2] and lumbosacral spine impairment. (Tr. 12-14). Plaintiff's claims were denied initially and

---

[1] Polyneuropathy is a neurological disorder that occurs when many nerves throughout the body malfunction simultaneously. It can cause weakness, loss of speech, pins-and-needle sensations or burning pain.

[2] Affective disorder is a mental disorder characterized by dramatic changes or extremes of mood.

on reconsideration.  (*Id.*)  Plaintiff requested a hearing, which was held before an ALJ on

May 14, 2009.  (Tr. 9).  A supplemental hearing was held on March 8, 2010.  (*Id.*)

Plaintiff was represented by counsel.  (*Id.*)  Both a vocational expert and medical expert

testified.  (*Id.*)

The ALJ found that Plaintiff was not disabled because she has the residual

functional capacity to perform at least sedentary work. [3] [4]  (Tr. 16).  The ALJ's decision

became final and appealable when the Appeals Council denied Plaintiff's request for

review.  (Tr. 1-4).  Plaintiff subsequently filed this action in this Court seeking judicial

review pursuant to Section 205(g) of the Act.  *See* 42 U.S.C. §§ 405(g).

Plaintiff is 51 years old.  (Tr. 20).  She graduated from high school and attended

college for one year.  (Tr. 11).  Plaintiff has past relevant work experience training

mentally disabled individuals in county services workshops.  (*Id*.)

The ALJ's "Findings," which represent the rationale of his decision, were as

follows:

1.      The claimant met the insured status requirements of the Social
        Security Act through September 30, 2009, for cash benefits and
        through December 31, 2011, for Medicare only benefits.

---

[3]     A claimant's residual functional capacity ("RFC") is an assessment of "the most [he] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[4]     Work classifications are defined for Social Security purposes based on the amount of physical exertion involved.  Sedentary work (least strenuous) involves lifting no more than ten pounds at a time and occasionally lifting or carrying small items.  It also involves a certain amount of walking or standing.  20 C.F.R. §§ 404.1567, 416.967.

2.    The claimant has not engaged in substantial gainful activity since December 14, 2006, the alleged disability onset date (20 C.F.R. 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: fibromyalgia; polyneuropathy; and affective disorder with features of depression and anxiety (20 CFR 404.1520(c)and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform at least sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with additional restrictions of option to alternate between sitting and standing at 30-minute intervals; no climbing ropes, ladders, or scaffolds; no balancing; climbing stairs, stooping, kneeling, crouching, and crawling are limited to frequently; no exposure to hazards or vibrations; no work on uneven surfaces; no repetitive use of foot controls; and jobs that permit use of a cane to ambulate.  In addition, she should not lift more than 10 pounds, and she should not be required to maintain concentration on a single task for longer than 15 minutes at a time.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on December 31, 1960.  She was 45 years old, which is defined as a "younger individual," on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 14, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12- 21).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI.  (Tr. 21).

On appeal, Plaintiff argues that: (1) the ALJ erred in assigning proper evidentiary weight to the opinions of the treating and examining physicians and specialists; and (2) the ALJ's use of the credibility finding with regard to evaluating and minimizing the impact of the claimant's subjective complaints and statements of work-related capacity is not supported by substantial evidence.  The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon

-4-

which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal
> merely because substantial evidence exists in the record to
> support a different conclusion.  The substantial evidence
> standard presupposes that there is a "zone of choice" within
> which the Commissioner may proceed without interference
> from the courts.  If the Commissioner's decision is
> supported by substantial evidence, a reviewing court must
> affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is

entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present

sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## A.

The record reflects that:

Plaintiff testified that she lives at a friend's home.  (Tr. 11).  She stopped working

due to weakness in her arms and legs.  (*Id.*)  She has so much pain in her shoulders,

hands, and arms, that she cannot raise her arms above the shoulders.  (*Id.*)  She estimated

that she can walk a half block with a walker or cane, stand for five minutes, and sit for

thirty minutes at a time.  (*Id.*)  She drops things and cannot lift a gallon of milk.  (*Id.*)

She alleged depression with insomnia and feelings of failure.  (*Id.*)  She cried once a

week and has panic attacks once a month which last for two to three hours.  (*Id.*)  She was

hospitalized in January 2008 for an attack of depression and paranoia, though she does not think she is paranoid.  (*Id*.)

Plaintiff saw a neurologist, Dr. Vandersluis, in November 2006.  (Tr. 12).  The exam appeared to be normal other than some mild tenderness in the right triceps.  (*Id*.)  He thought the reported diagnosis of fibromyalgia was reasonable.  (*Id*.)

The claimant saw Dr. Henderson, a rheumatologist, in late 2006.  He reported that she had fibromyalgia, which appeared to be based on her allegation that she had the condition.  (Tr. 12).  His main clinical finding was "diffuse tender points."  (*Id*.)  In December 2006, he filled out a form to the effect that she could do her current work, but with nonspecific indication that she would have some difficulty with sustained work.  (*Id*.)  He saw her a few times through the first half of 2007, but in April 2007 said she "could return to work today without restrictions."  (*Id*.)

Plaintiff was seen at the Cleveland Clinic in May 2007 for evaluation of a one and a half year history of fatigue and diffuse pain that specialist evaluations, including by a neurologist and rheumatologist, showed "only abnormality is mild leukocytosis."[5]  (Tr. 12).  Exam showed exaggerated reactions, and the doctor was "unable to test strength properly due to poor effort."  It was noted that Plaintiff appeared to be extremely depressed and had a lot of outside stressors and that she "was weeping profusely."  (Tr. 13).  It was recommended that she see a psychiatrist.  (*Id*.)

---

[5]  Leukocytosis is a white blood cell count above the normal range.  It is frequently a sign of an inflammatory response.

Medical records from Dr. Bennett, a family physician, show that the claimant passed out at work in October 2006, but a neurological evaluation appeared to be normal. (Tr. 13).  Fibromyalgia was diagnosed by a rheumatologist per report in early 2007.  (*Id*.)  Plaintiff complained of worse body pain in late 2007.  (*Id*.)  Plaintiff was referred to Dr. Nguyen, a pain management specialist, in December 2008.  (*Id*.)  She continued non-narcotic medications and psychotic medications through her last visit in March 2009. (*Id*.)

Plaintiff was taken to the emergency room for possible overdose of medications with alcohol.  (Tr. 13).  She was psychiatrically hospitalized for nine nights in January 2008.  Gastric lavage and charcoal treatments were performed.[6][7]  (*Id*.)  At discharge Plaintiff was diagnosed with major depression with paranoia, panic attacks, polysubstance abuse (alcohol, opiates, benzodiazepines), personality disorder, posttraumatic stress disorder, and mood disorder due to drugs and alcohol.  (*Id*.)  She was described as "very manipulative, hostile, accusatory, very somatic, med seeking" as well as having poor insight into her behavior and "in massive denial" with regard to her substance issues.  She was "highly encouraged to follow local mental health center and stay away from heavy duty narcotics or such medication" but was not interested in this recommendation.  (*Id*.)

---

[6] Gastric lavage is also known as stomach pumping.

[7] Activated charcoal is used to treat poisonings, reduce intestinal gas, lower cholesterol levels, prevent hangover, and treat bile flow problems.

Medical records of Dr. Nguyen, a pain management physician, show that Plaintiff began seeing him in December 2008. (Tr. 13). That month, a urine drug screen was positive for methadone and other narcotics. (*Id*.) An MRI showed multilevel degenerative changes of a mild nature. (*Id*.) An EMG in February 2009 showed sensory/motor polyneutopathy but no radiculopathy. (*Id*.) Plaintiff used a cane, but the doctor did not prescribe it. (*Id*.) Plaintiff often asked for increased narcotics, which the doctor provided, and she often reported using up the medications early and needing more. (*Id*.) The diagnosis appeared to be fibromyalgia because of Plaintiff's complaints of pain all over her body. (*Id*.) Visits are documented through March 2010 on a monthly basis. (*Id*.)

Plaintiff attended a consultative exam in June 2009 with Dr. Onamusi at the request of the Bureau of Disability Determination. (Tr. 13). However, her presentation was such that the doctor said he could not reliably assess her condition. (*Id*.)

Dr. Kramer, a psychologist, examined Plaintiff in July 2007. Plaintiff alleged inability to work mainly due to physical limitations, including chronic pain, needing a cane to walk, and difficulty holding a pen to write. (Tr. 14). She reported some cognitive decline, crying, and irritability. (*Id*.) She was taking Xanax and Cymbalta "with some minimal benefit." (*Id*.) "Overall the claimant displayed no obvious psychopathaloy in the interview itself, although she was somewhat vague as an informant." (*Id*.) Intelligence was estimated to be average. (*Id*.) Dr. Kramer diagnosed adjustment disorder with mixed

emotional features.[8]  (*Id.*)  He assessed social functioning for the workplace as "slightly impaired."  (*Id.*)  There were moderate limitations in cognitive and stress tolerance factors for work.  (*Id.*)

Plaintiff had an initial evaluation at Advanced Therapeutics in July 2008 with a counselor.  (Tr. 14).  She alleged depression due to fibromyalgia and other stressors, with symptoms including insomnia and crying.  (*Id.*)  She admitted that she had been drinking and taking medications at the time she was hospitalized in January 2008.  She lived in her own home with her eight-year-old daughter.  (*Id.*)  Mental status exam indicated essentially normal findings throughout.  (*Id.*)

**B.**

First, Plaintiff alleges that the ALJ erred in making the RFC finding because he failed to assign greater evidentiary weight to the opinions of treating and examining physicians and specialists.  Specifically, Plaintiff maintains that the ALJ failed to evaluate medical source opinion evidence, improperly discounted the opinion of Drs. Bennett and Nguyen, and cites no medical or factual source for his decision that Plaintiff can do a range of at least sedentary work with additional limitations.

Unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients often exhibit normal physical and neurological findings.  *Preston v. Sec'y of Health & Human Services*, 854 F.2d 815, 817-18 (6th Cir. 1988).  However, diagnosis

---

[8]    Adjustment disorder is a group of symptoms, such as stress, feeling sad or hopeless, and physical symptoms that can occur after you go through a stressful life event.  The symptoms occur from lack of coping devices.

alone is never conclusive evidence of disability and does not automatically entitle a claimant to benefits.  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) ("[A] diagnosis of fibromyalgia does not automatically entitle [Plaintiff] to disability benefits; particularly so here, where there is substantial evidence to support the ALJ's determination that [Plaintiff's] fibromyalgia was either improving or, at worse, stable.").  "[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).  Here, the ALJ recognized that Plaintiff's fibromyalgia was a severe impairment that limited her functional abilities but concluded that she still retained the RFC to perform a reduced range of sedentary work.  (Tr. 16).[9]

The ALJ cites to the treating rheumatologist, Dr. Henderson, who indicated in April 2007 that Plaintiff "could return to work today without restrictions" (Tr. 12, 354), which conflicts with Plaintiff's testimony that Dr. Henderson "didn't tell [her] anything" about her ability to go back to work.  (Tr. 94).  However, at the very next visit on June 20, 2007, Dr. Henderson filled out "disability forms" for Plaintiff noting that she had not really responded to muscle relaxants.  (Tr. 354).  Notes indicate that Dr. Henderson treated

---

[9]  Dr. Henderson noted "diffuse tender points" during examinations (Tr. 354-55, 360), but the origin of Plaintiff's fibromyalgia diagnosis is not clear.  Plaintiff testified that Dr. Henderson was the one who diagnosed her with fibromyalgia (Tr. 94), yet Dr. Henderson indicated that the Cleveland Clinic "gave her the diagnosis of fibromyalgia."  (Tr. 354).  Plaintiff reported to Dr. Vandersluis that she had been diagnosed with fibromyalgia at recent emergency room visits (Tr. 12, 326), although contemporaneous emergency room notes indicated that she was diagnosed with low back pain and lumbar spondylosis (Tr. 240, 289, 293, 296).

Plaintiff from December 15, 2006 -June 20, 2007, and that on December 21, 2006, Dr. Henderson completed an FMLA form documenting that Plaintiff had 1½ years of moderate pain, six months of severe pain and would only be able to work "intermittently" for an "indefinite" period of time due to the fibromyalgia condition. (Tr. 356-58). Accordingly, the Court finds that the "return to work" note was short-lived and did not characterize Dr. Henderson's opinion of Plaintiff's condition over any significant period of time.

The ALJ relies in part on the state agency physicians, Drs. Hill and Teague, who reviewed the evidence and opined that Plaintiff still retained the RFC to perform medium work. (Tr. 17, 390-91, 401). The medical expert, Dr. Gardner, reviewed the treatment records and objective medical evidence and testified that Plaintiff would be capable of medium work. (Tr. 17, 99). Dr. Gardner explained that records showed that Plaintiff had tender points on examination, only mild abnormalities on an EMG without corresponding neuropathic changes on physical examination, possible functional overlay due to Plaintiff's presentation, and a good response to medications. (Tr. 17, 98-99). Given that these physicians opined that Plaintiff was capable of returning to work with few restrictions, the ALJ actually gave Plaintiff the "maximum benefit of the doubt" by assigning a reduced sedentary RFC. (Tr. 16, 20). However, "in determining the substantiality of the evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of

defending against a disability claim." *Whitson v. Finch*, 437 F.2d 728, 732 (6th Cir. 1971).

Plaintiff argues that the ALJ should have given controlling or deferential weight to the opinion of the treating primary care physician, Dr. Bennett. However, Dr. Bennett did not provide any functional limitations in her statements, instead broadly asserting that Plaintiff was "unable to work" due to all of "her medical conditions." (Tr. 397, 406). A medical source's statement that a claimant is "disabled" or "unable to work" is never a medical opinion as this determination is "reserved to the Commissioner." 20 C.F.R. § 404.1527(e). Treating source statements on issues that are reserved to the Commissioner are "never entitled to controlling weight or special significance." SSR 96-5P.

To the extent that Dr. Bennett's statements constituted an opinion about disabling limitations, the ALJ reasonably declined to give controlling weight, because Dr. Bennett's statements were not well-supported nor consistent with other evidence. (Tr. 18). A treating source's medical opinion is entitled to "'controlling weight' unless it is either not 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' or is 'inconsistent with the other substantial evidence in [the] case record.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not given controlling weight to a treating physician's medical opinion, the ALJ considers the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) to determine how much weight to give the opinion.

Here, Dr. Bennett's opinion was not well-supported by medical evidence.  The

ALJ explained that, to the extent Dr. Bennett believed Plaintiff had disabling limitations,

Dr. Bennett "provide[d] no explanation" for her opinion.  (Tr. 18).  Dr. Bennett merely

stated that Plaintiff had diagnoses of fibromyalgia, bulging lumbar discs, peripheral

neuropathy, insomnia, situational anxiety, and depression, without providing any

"findings specific to why any of these impairments . . . render [Plaintiff] disabled."  (Tr.

18, 397, 406).  Citing diagnoses is not enough to establish disabling limitations.  *Foster v.*

*Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (diagnosis alone is not by itself disabling).  The

ALJ also explained that Dr. Bennett's treatment notes were "equally terse and show[ed]

virtually no significant discussions with [Plaintiff] about anything and no examinations."

(Tr. 18).  Dr. Bennett did not examine Plaintiff for tender points nor track her

fibromyalgia symptoms.  Given the lack of supporting evidence or explanation for Dr.

Bennett's limited opinion, the ALJ reasonably declined to give it controlling weight.

*Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (An ALJ "is not bound by conclusory

statements of doctors, particularly where they are unsupported by detailed objective

criteria and documentation.").

Additionally, the ALJ noted that Dr. Bennett's opinion was not corroborated by

any specialist opinion regarding Plaintiff's musculoskeletal impairments, which is

significant because, as the ALJ discussed, rheumatologist Dr. Henderson opined that

Plaintiff "could return to work today without restrictions."  (Tr. 12, 354).  Not only did

these inconsistencies explain why Dr. Bennett's opinion was not entitled to controlling

weight, but they also touched on "good reasons" for discounting Dr. Bennett's opinion.

*See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the

record as a whole, the more weight we will give to that opinion.").[10]

The ALJ also discussed evidence that indicated poor effort or exaggeration on

Plaintiff's part. *See* 20 C.F.R. § 404.1529(c)(3)(vii) (relevant of "[o]ther factors

concerning your functional limitations and restrictions due to pain or other symptoms").

The ALJ noted that Plaintiff's examination at the Cleveland Clinic showed exaggerated

reactions, and that the doctor was "[u]nable to test strength properly due to poor effort."

(Tr. 12, 17, 297).  However, the impression (conclusion after the examination) was:

> 46 year old female with a 1.5 year h/o fatigue, diffuse pain, mental clouding.

> Investigated by a neurologist, rheumatologist and PCP but amongst outside records only abnormality is mild leukocytosis.

> Symptoms suggestive of fibromyalgia.

> Patient is extremely depressed and has lots of outside stressors.

> Needs to see a psychiatrist for evaluation of depression.

> Also may need to have a sleep study in future.

(Tr. 343).  The supervisor, Carmen Geta, M.D., concurred with the examiner on the

impression and commented "Fibromyalgia Depression."  (Tr. 344).  *In toto*, the records

---

[10]    Plaintiff also alleges that the ALJ improperly discounted an opinion of Dr. Nguyen, the pain control physician, but does not explain why.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (conclusory claim of error without further argument or authority may be considered waived).  Plaintiff does not identify, and the record does not reflect, an actual opinion of functional limitations given by Dr. Nguyen.

from the Cleveland Clinic indicate symptoms suggestive of fibromyalgia.

The ALJ also noted that consultative examiner, Dr. Onamusi, could not reliably assess Plaintiff's abilities, as she "manifested extreme pain behavior" that prevented any range of motion testing, and "[l]ight palpatory examination of virtually every part of her body resulted in extreme pain response." (Tr. 13, 482). However, when reviewed in context, the impression is a bit different:

> The physical examination . . . revealed . . . She came in for this examination using a walker and she had apparent difficulty with ambulation and transfer. She required substantial assistance getting onto and off the examination table. She manifested extreme pain behavior to the extent that examination was limited. Light palpatory examination of virtually every part of her body resulted in extreme pain response. She was crying for the most part through this examination and the exam actually terminated. I had the nurse, Shari, with me during this examination. I was unable to do any range of motion testing in any of the joints because of her pain behavior and apparent inability to carry out this exam. She was unable to stand without support.

> IMPRESSION:

> 1. Reported history of fibromyalgia and polyneuropathy.

> Based on my observation during this examination, it is my opinion that this patient will require the use of assistive devices for ambulation and transfer. Overall, however, I had difficulty making objective assessment of her functional capabilities as there may be some complicating functional overlay to her presentation.

(Tr. 482). The Court finds that the plain language of Dr. Onamusi's report is that Plaintiff required the use of assistive devices for walking and needed help getting on and off the examining table at that particular time, but that the doctor had difficulty making an

objective assessment because of Plaintiff's emotional state.[11]

The ALJ also found inconsistencies between Plaintiff's presentation and what her treating sources observed.  Plaintiff told consultative psychologist Dr. Kramer that she had difficulty holding a pen well enough to write and testified about difficulties using her hands, but the ALJ observed that Plaintiff regularly was able to smoke cigarettes, used her hands to grasp her cane, and was observed by hospital staff to be eating and drinking without difficulty.  (Tr. 20, 378, 522).  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (ALJ appropriately discounted a claimant's credibility in light of contradictions among medical reports and the claimant's testimony).

However, these inconsistencies fail to recognize that the symptoms experienced by fibromyalgia patients are not characterized by "objective" findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007) ("[W]e have recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs . . . Rather fibromyalgia patients "manifest normal muscle strength and neurological reactions and have full range of motion.").

The ALJ also considered Plaintiff's treatment for her symptoms.  29 C.F.R. § 404.1529(c)(3)(v) (relevance of treatment received when evaluating the intensity and

---

[11]    The ALJ also considered the findings of psychiatrist Dr. Patwa who indicated that Plaintiff "relate[d] all her symptoms with this alleged diagnosis of fibromyalgia and even her external problems she relates . . . [t]o fibromyalgia"; he described her as "melodramatic," "medication-seeking," and an "unreliable historian."  (Tr, 18, 424).

persistence of symptoms).  Physical therapy, exercise and fitness programs, and/or stress-relief methods are often part of the initial treatment regimen for fibromyalgia.  Therefore, the ALJ noted that Plaintiff did not pursue physical theory or an exercise program, despite Dr. Nguyen's prescription of an aquatic therapy program.  (Tr. 17, 530).  Dr. Nguyen noted in December 2008 that Plaintiff's last physical therapy session had been two years ago (Tr. 532), and subsequent treatment notes in January, February, March 2009, and March 2010 noted that Plaintiff had not started physical therapy/aquatic treatment (Tr. 411, 500, 514, 516, 523).

Additionally, the ALJ noted that the Plaintiff relied on medications for relief of symptoms.  (Tr. 12).  20 C.F.R. § 404.1529(c)(3)(iv).  In fact, the record reflects that Plaintiff repeatedly reported to Dr. Nguyen and his colleague, Dr. Nalamada, that her pain symptoms were "controlled on current medication" with no side effects (Tr. 499-501, 503, 505, 510, 522, 525), in contrast to her testimony that she had 8/10 pain on a typical day, even with medications.  (Tr. 89).  *See Casey v. Sec'y of Health & Human Services*, 987 F.2d 1230, 1234 (6th Cir. 1993) (impairment well-controlled with medication is not disabling).  The ALJ observed that Plaintiff "often reported using up these medications early and needing more."  (Tr. 12).  In April and May 2009, Dr. Nguyen noted Plaintiff took more Methadone than was prescribed.  (Tr. 511, 513).  In December 2008, Plaintiff admitted to Dr. Nguyen after a positive drug screen that she had not been prescribed Methadone, but borrowed some from a friend.  (Tr. 12, 18, 533).  In January 2010, Dr.

Nalamada noted a positive drug screen for THC.[12] (Tr. 526). Dr. Patwa further described Plaintiff as "very manipulative" and "medication-seeking" (Tr. 419, 424); he reported that it was "very obvious" that they "need[ed] to look in to the amount and number of addictive drug[s] she has been taking to alleviate pain." (Tr. 426). He noted that Plaintiff was "likely to continue to blame others and needs various agencies to work out her unresolved conflict by being a professional grievance seeker and there is little measure of time before she takes legal action against innocent people." (*Id.*) The ALJ is permitted, pursuant to the regulations, which instruct adjudicators, to consider statements by physicians and "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain." 20 C.F.R. § 404.1529(c)(1), (c)(3)(iv).

The ALJ also considered Plaintiff's daily living activities, noting that she prepared meals for herself and young daughter, performed some housework, handled her own finances, took care of her personal needs, and shopped. (Tr. 15, 366-67). Plaintiff's grooming was neat and clean. (Tr. 404). Although these activities do not by themselves demonstrate an ability to work full-time, the ALJ was permitted to consider them along with the other regulatory factors. 20 C.F.R. § 404.1529(c)(3)(i) (authorizing an ALJ to consider activities when evaluating pain and functional limitations).

Plaintiff criticizes the ALJ's discussion of her use of a cane and walker, but ultimately, the ALJ credited Plaintiff's allegations regarding 'use of a cane' (Tr. 17) by limiting her to "jobs that permit use of a cane to ambulate." (Tr. 16). Plaintiff also

---

[12] THC is tetrahydrocannabinol and is the active ingredient in marijuana.

contests the ALJ's recitation of objective findings, such as her mild lumbar spine findings and normal neurological examination (Tr. 17), because fibromyalgia patients often exhibit normal physical and neurological findings. However, the ALJ relied on multiple factors, not just the objective medical evidence, when evaluating Plaintiff's work-related limitations.

Plaintiff also maintains that the ALJ erred by not citing a medical source whose RFC matched the sedentary RFC found by the ALJ. However, conclusory allegations of error are waived. *McPherson*, 125 F.3d at 995-96. Moreover, the Sixth Circuit has made clear that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ could have found an RFC for medium exertional work based on the opinions of Drs. Hill, Teague, and Gardner, but provided "some degree of deference to [Plaintiff] and Dr. Bennett" by limiting Plaintiff to sedentary work. (Tr. 18).[13]

---

[13] Plaintiff also complains about the ALJ's use of boilerplate language in his decision. *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010). However, the Seventh Circuit never stated that the mere appearance of this language in a decision is grounds for reversal, rather it is the use of the boilerplate without any other explanation that the Seventh Circuit has criticized. *Richison v. Astrue*, No. 11-2274, 2012 U.S. App. LEXIS 2419, at *3 (7th Cir. Feb. 7, 2012) (boilerplate is "inadequate by itself, to support a credibility finding"). In this case the ALJ did not rely solely on the template, rather the ALJ considered medical opinions indicating Plaintiff could return to work; evidence of poor effort and symptombility of pain on medications, little physical therapy, and drug seeking behavior; exaggeration; a treatment history showing the stability of pain on medications, little physical therapy, and drug-seeking behavior; and her activities of daily living. The ALJ properly considered the regulatory factors relevant to her symptoms. 20 C.F.R. § 404.1529(c)(3).

The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While Plaintiff has identified various issues with the ALJ's decision, substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

## C.

Next, Plaintiff claims that the ALJ's use of the "credibility" finding with regard to evaluating and minimizing the impact of claimant's subjective complaints and statements of work-related capacity is not supported by substantial evidence in the record as a whole and was contrary to law.

The ALJ permissibly considered evidence consistent with self-limiting behaviors. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (ALJ appropriately discounted a claimant's credibility in light of contradictions among medical reports and the claimant's testimony). Although Plaintiff may disagree with the outcome of the ALJ"s evaluation of the regulatory factors, the ALJ fulfilled his duty to consider the regulatory factors relevant to her symptoms. 20 C.F.R. § 404.1529(c)(3). It is not the province of the reviewing court to "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

## III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that

Lisa Ballinger was not entitled to disability insurance benefits and supplemental security

income, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**;

and, as no further matters remain pending for the Court's review, this case is **CLOSED.**


Date:  11/29/12                                         *s/ Timothy S. Black*
                                                        Timothy S. Black
                                                        United States District Judge